IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CHIRSTABELLE MUSHALA** ) <br> ) <br> Plaintiff,     ) <br> ) <br> v.           ) <br> ) <br> **US BANK, NATIONAL ASSOCIATION** ) <br> ) <br> Defendant,    ) <br> ) <br> **SPECIALIZED LOAN SERVICING, LLC** ) <br> ) <br> Defendant,    ) <br> ) <br> **BWW LAW GROUP, LLC**     ) <br> ) <br> Defendant.    ) | Case No.: <u>1:18-cv-01680</u> |

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

The Plaintiff, Christabelle Mushala, by undersigned counsel, hereby sues Defendants US Bank, National Association ("US Bank") and Specialized Loan Servicing, LLC ("SLS") and BWW Law Group, LLC ("BWW"), and represents unto the Court as follows:

**PRELIMINARY STATEMENT**

1.  This is an action for actual and statutory damages, costs and attorney's fees brought pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. §2605 et seq. ("RESPA"), Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA"), D.C. Code §26-1101 et seq. ("MLBA") and District of Columbia Consumer Protection Procedures Act, D.C. Code §28-3901 et seq. ("CPPA")

**PARTIES, JURISDICTION AND VENUE**

2.  Christabelle Mushala is a natural person residing in the District of Columba.

3.  US Bank is a financial institution that invests in mortgage loans.

4.  SLS is a loan servicer of mortgage loans, including non-performing loans. Ocwen acquires servicing rights to some mortgages that are in default at the time of transfer

1

and proceeds to collect on those mortgages. With respect to those debts, Ocwen is a debt collector as defined by the FDCPA because it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another and its collection activities are covered by the FDCPA.

5. BWW is a law firm specializing in the collection of mortgage debts on behalf of loan servicers and loan investors.

6. The jurisdiction of this Court arises under 15 U.S.C. § 1692k.

## FACTUAL ALLEGATIONS

7. Ms. Mushala purchased 2014 Newton Street, NE, Washington, DC (the "Property") as her personal residence in 1999.

8. Ms. Mushala refinanced the Property on July 18, 2008. The refinance loan was done by USA Home Loans, Inc. in the amount of $307,545.00. The refinance was memorialized by a Promissory Note ("Note") and Deed of Trust ("DOT) (collectively, the "July 2008 Loan"). This refinance loan paid off a Deed of Trust from a prior refinance that was done in September 2006. The release for the September 2006 Deed of Trust was executed and filed on July 30, 2008 and August 13, 2008, respectively. However, the July 2008 Deed of Trust was not recorded until 2010.

9. Another Promissory Note and Deed of Trust was executed on December 19, 2018 ("December 2008 Loan"). The Lender and beneficiary of December 2008 Note and Deed of Trust was Wells Fargo Bank, N.A. ("Wells Fargo"). The loan amount for the December 2008 Loan was $312,158.00. Unlike the July 2008 Deed of Trust, the December 2008 Deed of Trust was timely recorded. However, Ms. Mushala only remembers executing the July 2008 Loan Documents and does not recall specifically signing the December 2008 Loan Documents.

10. Although there was a purported loan done in December 2008, there was no Release of the July 2008 Deed of Trust. If there really was a $312,158.00 loan done in

2

December 2008, then that December 2008 Loan would have paid off the July 2008 Loan and a Release or Certificate of Satisfaction would have been filed for the July 2008 Loan. Upon information and belief, there was no legitimate loan done in December 2008 or that transaction was accompanied by some deceit and fraud.

11. Upon information and belief, the July 2008 DOT was not timely filed and was not released because of some fraudulent activity surrounding the December 2008 Loan.

12. The July 2008 Loan and December 2008 Loan both were FHA loans.

13. As an FHA loan, the DOTs for both loans required the Lender to conduct or attempt to conduct a face-to-face meeting prior to filing for foreclosure.

14. Wells Fargo declared the loan in default but did not attempt to hold a face-to-face meeting within 3 months of the loan purportedly going into default. Upon information and belief, Wells Fargo did not attempt to hold the face-to-face meeting because Wells Fargo wanted to foreclose on the Property.

15. If Wells Fargo had conducted a face-to-face meeting, then Ms. Mushala would have cured the default. A face-to-face meeting would have been helpful for Ms. Mushala to determine what she should do. Upon information and belief, a face-to-face meeting would have assisted Ms. Mushala in making a decision to sell the Property for a profit.

16. In March 2014, US Bank National Association, not in its individual capacity, but solely as trustee for the SROF-2012-S3 REMIC Trust II sent Ms. Mushala a letter informing her that it acquired ownership of the loan on February 12, 2014 and that SLS was selected as the servicer for the loan.

17. On February 5, 2014 an Assignment of Deed of Trust And Other Loan Documents was executed by Wells Fargo. The Assignment purportedly transferred the December 2008 DOT and Note to Secretary of Housing and Urban Development ("HUD").

18. The 2008 Note bears an endorsement from Wells Fargo to HUD and an Allonge containing a blank endorsement from 365 Avenue Lenders Services, LLC ("365 Ave").

19. The blank endorsement from 365 Avenue was invalid because the 2008 Note was purportedly specially endorsed to HUD and only HUD could negotiate the 2008 Note.

20. The blank endorsement contained language indicating that 365 Avenue had authority to act on behalf of PRMF Acquisition LLC ("PRMF"), which had authority to act on behalf of HUD. Upon information and belief, 365 Avenue had no authority to endorse the Note on behalf of HUD. Further, PRMF did not or could not delegate power to negotiate the Note.

21. Upon information and belief, the Allonge was not firmly affixed to the 2008 Note and therefore not a part of the 2008 Note.

22. Wells Fargo is notorious for forging indorsements on promissory notes. Upon information and belief, Wells Fargo may have forged the 365 Avenue indorsement. Wells Fargo had no authority to negotiate the December 2008 Note on behalf of HUD. Furthermore, PRMF did not have authority to delegate 365 Ave to indorse the 2008 Note.

23. Whether Wells Fargo forged the blank endorsement on the 2008 Note or 365 Ave actually indorsed the Note, the blank indorsement was a nullity because neither had authority to indorse the Note on behalf of HUD.

24. On December 18, 2015, a foreclosure action was filed by U.S. ROF III Legal Title Trust 2015-1, By U.S. Bank National Association, As Legal Title Trustee ("US Bank").

25. Although US Bank purportedly filed the foreclosure action, SLS was named in the caption of the foreclosure complaint as the party in care of US Bank, and the foreclosure complaint was verified by SLS.

26. Upon information and belief, SLS was the real entity behind the filing of the foreclosure action and US Bank was not the real party in action.

4

27. Upon information and belief, US Bank was not the holder of the 2008 Note when the foreclosure action was filed. US Bank did not qualify as the holder of the 2008 Note because it was not in possession of the December 2008 Note when the foreclosure action was filed in December 2015.

28. Even if US Bank were in possession of the 2008 Note, it could not enforce the Note because the blank endorsement was invalid.

29. Further, the December 2008 Note may have never been signed by Ms. Mushala and her purported signature on that Note may be a forgery. The December 2008 Note is a letter-sized document and Ms. Mushala signed a legal-sized document. Therefore, the signature on the letter-sized document could not have been done by Ms. Mushala.

30. Although Wells Fargo declared the loan in default and delinquent for 3 months or more, Wells Fargo never attempted to conduct a face-to-face meeting with Ms. Mushala.

31. Neither US Bank nor SLS attempted to conduct a face-to-face meeting with Plaintiff prior to filing the foreclosure action as required by the Deed of Trust.

32. On June 9, 2017, Defendant BWW sent Plaintiff a letter advising that a foreclosure sale had been scheduled for July 5, 2017. The scheduled sale was illegal because US Bank never scheduled a face-face meeting, which was required as a condition precedent to foreclosing under the Deed of Trust.

33. The scheduled foreclosure sale was illegal because US Bank did not have standing when it filed the foreclosure action on December 18, 2015.

34. Prior to the illegal foreclosure sale, in March 2017, Plaintiff had an arranged to sell the Property to an investor. In order to move forward with the sale, the Plaintiff requested a payoff statement from SLS. However, SLS provided Plaintiff with a reinstatement quote.

35. SLS' failure to provide the requested payoff statement precluded Plaintiff from obtaining the necessary payoff information to provide to the investor. Consequently, the Plaintiff was unable to sell the Property to the investor.

36. On August 5, 2017, Plaintiff sent SLS a letter requesting certain information pertaining to the loan and/or servicing of the loan, including requests regarding (a) the whereabouts of the Note, (b) information of the endorsements and the allonge, (c) loan transaction history, (d) invoices or proof of payment for any assessments on the loan, (e) transcript of Mushala's phone calls between February 1st to May 31st 2017 and (f) cancelling or postponing the foreclosure sale until the Defendants have complied HUD's requirement to hold a face-to-face meeting before going forward with a foreclosure.

37. SLS failed to acknowledged Plaintiff's letter dated August 5, 2017.

38. SLS failed to investigate and/or otherwise respond to her August 2017 letter.

39. On September 5, 2017, Plaintiff requested a response to her August 5th letter and included a copy of the letter as an enclosure.

40. Thereafter, SLS sent a letter in acknowledgment of Plaintiff's August 2017 letter. SLS' acknowledgment letter was dated for August 29, 2017, however, the letter was not received until after September 5, 2017 and was probably mailed well-after September 5, 2017.

41. SLS did not send a letter acknowledging Plaintiff's September 2017 letter.

42. By letter dated September 27, 2017, SLS responded to Plaintiff's letter.

43. In its response, SLS refused to provide answers to Plaintiff's inquiries regarding the location and/or custody of the Note, endorsements on the Note, and ownership of the Note. SLS also refused to provide a *certified* copy of the Note. Additionally, SLS refused to provide the requested phone transcripts.

44. Upon information and belief, SLS did not provide the foregoing information because it did not know where the Note was located, it could not validate the legitimacy of the

endorsements, it could not prove ownership of the Note, it could not certify its copy of the Note as true and correct. And the phone transcript was not provided because it would have revealed Plaintiff requested a payoff statement –*not* the reinstatement quote that SLS provided.

45.    SLS claimed it had no obligation to provide the face-to-face meeting because the loan was no longer an FHA loan. However, this claim was baseless for the Deed of Trust required a face-to-face meeting and there was no amendment to the Deed of Trust modifying that obligation.

46.    SLS refused to provide any invoices or proof of payments to support the fees, charges and other assessments on the loan. Upon information and belief, SLS refused to provide such information because its fee, charges or assessments were unsubstantiated fees, inflated or excessive fees, redundant or duplicative fees, and fees for services or actions that never occurred.

47.    SLS also refused to provide a current payoff statement. SLS stated that because the Property had been foreclosed on, the Plaintiff was not entitled to payoff statement. However, SLS claimed that the foreclosure sale left a deficiency that the Plaintiff was obligated to pay, and that deficiency balance was drawing daily interest. Being that SLS was no longer providing monthly mortgage statements, Plaintiff was entitled to receive payoff information regarding the purported deficiency.

48.    On September 29, 2017, Plaintiff filed a motion to dismiss the foreclosure action on the basis that US Bank lacked standing.

49.    On March 5, 2018, Plaintiff sent SLS another letter wherein she complained that SLS did not provide information to the inquiries in her September 5th 2017 letter. In her letter she explained in detail the reason such information was required and that she was entitled to the information. Additionally, Plaintiff requested copies of all documents that SLS relied upon in its earlier response to her September 5th 2017 letter.

50. On April 6, 2018, SLS sent a letter stating it received the March 5, 2018 letter and that it had also received a similar letter on August 5, 2017. SLS further stated that it had already responded to requested information. SLS went on to state in a conclusory manner that the fees were valid and referred Plaintiff to the payment history. Next, SLS choose to expand upon the inspections and the escrow advances. SLS stated the inspections were done when the loan is more than 45 days delinquent and cost was $11.35. SLS stated the escrow advances were taxes and insurance that was paid from day of default. SLS' explanation was inadequate because it did not explain or address Plaintiff's specific questions about the inspection fees and escrow advances.

51. SLS ignored or otherwise did not provide Plaintiff's requested information on the Attorney Fees, Corporate Advances, Outstanding Fees, Property Inspections in the amount of $351.85 and $363.20, Legal Fees and interest rate before and after the foreclosure sale. Additionally, SLS did not provide any invoices or proof of payment as requested.

52. In addition to disputing the loan directly with SLS, Plaintiff sent dispute letters to the credit reporting agencies Equifax, Experian and Trans Union ("CRAs").

53. On April 2, 2018, Plaintiff disputed the SLS account with the CRAs. In her dispute letter, she stated the report was incorrect because the mortgage account was being reported as "Foreclosed" when in fact the foreclosure process had not been completed, and therefore, it had not been foreclosed. She also stated that the report failed to report any mitigating information regarding the purported delinquency. And she went on to detail the mitigation information—e.g., she tried to pay off the debt in 2017 but SLS failed to provide a payoff quote, SLS has failed to show that it is in possession of the original Note and entitled to receive any payment—that should have been included in the report. Next, she disputed the reported loan type. More specifically, she stated the loan was an FHA loan and should not be

reported as a convention loan. She then noted that FHA requires a face-to-face meeting before a foreclosure can be initiated and that SLS should report that no such meeting was held.

54. The reporting was inaccurate because it reported the loan as foreclosed in July 2017. This reporting was inaccurate because the foreclosure had not been completed in July 2017. The foreclosure action is still being litigated, the foreclosure sale accounting has not been ratified and a motion to dismiss is pending. The account should have been reported as going thru the foreclosure process.

55. The reporting was inaccurate for another reason. SLS is reporting the account as a conventional loan, but the loan is an FHA loan. This was particularly misleading because it gave the false impression that there was no FHA/HUD face-to-face meeting required prior to filing the foreclosure action.

56. The reporting was also inaccurate because SLS omitted any of the mitigating information regarding the purported default. SLS' reporting did not state the entire story and does not provide all pertinent information that a prospective user of the report would find useful for making credit decisions. Consequently, SLS reporting was misleading in that it did not include remarks regarding the lender's contribution to Plaintiff's purported default.

57. SLS received notice of Plaintiff's dispute from the CRAs, but SLS ignored the information and claims in Plaintiff's dispute and simply regurgitated the same information it had previously reported to the CRAs.

58. Had SLS conducted a reasonable investigation and considered the content of Plaintiff's dispute, SLS would have discovered that it was reporting the foreclosure status of the loan inaccurately and/or incompletely, that the loan was inaccurately being reported as a conventional loan instead of an FHA loan, failed to notate the reporting was being disputed and failed to report any of the mitigating circumstances surrounding the status of the loan.

59. Due to SLS' lack of a reasonable investigation. It continued to report inaccurate, incomplete and materially misleading information.

60. Notwithstanding SLS' inaccurate reporting and refusal to correct its reporting after receiving a valid dispute from Plaintiff, Trans Union deleted the SLS account after receiving Plaintiff's dispute.

61. Upon information and belief, Trans Union deleted the SLS account because it found Plaintiff's dispute to be valid and found SLS' reporting to be patently inaccurate.

62. As a result of SLS failure to correct reasonably detectable errors after receiving Plaintiff's disputes, Plaintiff endured significant and substantial emotion distress, including frustration, agitation, apprehension, discouragement and anger.

63. On April 20, 2018, a status hearing was held in the foreclosure action. At the hearing the parties discussed Defendant's argument as to Plaintiff's standing. And the foreclosure judge ordered that Plaintiff make the original Note available for Defendant to inspect. The foreclosure judge kept Defendant's motion to dismiss and Plaintiff's motion to ratify accounting in pending status. A status hearing was set for May 18, 2018.

64. On May 18, 2018, the parties attended the status hearing. Prior to the hearing, the Defendant submitted a supplemental to her motion to dismiss. The foreclosure judge found Defendant's arguments convincing and ordered an evidentiary hearing for June 20, 2018.

65. On May 30, 2018, Plaintiff sent SLS a letter that requested the identity and contact information of the owner of the loan.

66. By letter dated June 7, 2018, SLS acknowledged Plaintiff's letter. In its letter, SLS did not identify the owner of the loan. Rather, SLS stated it needed more time to provide the requested information. However, SLS never followed up to provide the requested information, let alone within the 10-day statutory time period limit to provide such a response.

67.     Although SLS' letter was dated June 7, 2018, SLS did not mail the letter until June 12, 2018. Upon information and belief, SLS has a policy of mailing letters several days after the date SLS places on its letters.

68.     On June 20, 2018, the next status hearing was held and Mushala withdrew her motion to dismiss the foreclosure action. She was forced to withdraw her motion because the third-party buyer at the foreclosure sale was in the process of evicting her.

## COUNT ONE: VIOLATIONS OF FDCPA
### (as to Defendants BWW and SLS)

69.     Plaintiffs incorporate paragraphs 1 - 68 by reference.

70.     Defendants violated 15 U.S.C. §1692e(2),(5),f(1) by collecting, attempting to collect and/or threatening to collect an inflated debt amount that was caused by, *among other things*, the assessment of unsubstantiated fees, inflated or excessive fees, redundant or duplicative fees, and fees for services or actions that never occurred.

71.     Defendants violated §1692e(2),(5),(10) and f(6) by falsely representing that Deed of Trust did not require a face-to-face meeting, falsely representing that they had complied with all the conditions precedent to conduct the foreclosure sale, and conducting the foreclosure sale while knowing that the they did not comply with the Deed of Trust.

72.     Defendants violated §1692e(2),(5),(10) and f(1),(6) by falsely representing that Plaintiff was the real party-in-interest and had standing to conduct a foreclosure sale while knowing that the Plaintiff was not the real party-in-interest and had no standing.

73.     Defendants violated §1692e(10) and f(1) by falsely representing that that the Defendants were in possession of the original Note at the commencement of the foreclosure action, falsely representing that the fabricated allonge legitimately endorsed the Note, and falsely representing a right to collect on the debt and foreclose on the Property.

74.     Defendant SLS violated 15 U.S.C. §1692e(8) by communicating information to a third party that was known to be false – failing to report the debt was disputed.

11

75. Defendants' violations caused the Plaintiff to endure damages including out-of-pocket costs, pecuniary costs, fear of losing the Property, loss of her home, worry about where her loved ones will live, anxiety about losing the family home, very heavy stress, severe headaches and stomach aches, sleepless nights, eating disorders, excessive worry, mental and emotional distress.

76. Defendants' conduct was the proximate cause of Plaintiffs injuries, rendering BWW and SLS liable for actual damages in an amount to be determined by the jury pursuant to 15 U.S.C. §1692k(a)(1), statutory damages pursuant to 15 U.S.C. §1692k(a)(2)(A), and reasonable attorney's fees pursuant to 15 U.S.C. §1692k(a)(3).

77. Plaintiff's FDCPA claim merely seeks monetary damages and does not seek to overturn the District of Columbia's superior court foreclosure judgment in favor of Defendants.

**COUNT TWO: VIOLATIONS OF RESPA**
**(as to Defendant SLS)**
.
78. Plaintiffs incorporate paragraphs 1 - 77 by reference.

79. Plaintiffs' loan is a federally related mortgage loan as defined by RESPA.

80. Defendant SLS is a servicer as defined by RESPA because it is responsible for the collection of periodic payments and applying those payments to the loan account.

81. SLS claims to be responsible for servicing Plaintiffs' loan and was purportedly servicing the loan when Plaintiff submitted her written inquiries.

82. SLS was obligated under RESPA to acknowledge Plaintiff's written inquires (i.e. qualified written request ("QWR"), notice of error ("NOE") or request for information ("RFI") within five days, and to respond substantively within 30 days of the date the written inquiry was received.

83. Plaintiff's written inquiries were letters that contained the name on the loan account and the account number for the account, was written on a piece of paper that was not

from SLS, pertained to the loan or the servicing of the loan, and/or notified SLS of an error or requested information from SLS.

84. Defendant SLS violated §2605(e),(f) by failing to respond within 7 days of Plaintiff's inquiry regarding payoff balance. See 12 C.F.R. § 1024.35(e)(3)(i)(A).

85. Defendant SLS violated 12 U.S.C. §2605(e)(1)(A) by failing to provide the Plaintiff with notice that it had received Plaintiff's written inquiries within 5 days.

86. Defendant SLS violated 12 U.S.C. §2605(e)(2) by failing to take appropriate action within 30 days of receiving Plaintiff's written inquiries.

87. Defendant SLS violated 12 U.S.C. §2605(e)(2)(A)-(C) by failing to take appropriate action, including conducting a reasonable investigation of Plaintiff's inquiries and correcting any errors that were reasonably discoverable, and conducting a reasonable investigation and providing the Plaintiffs with the requested information or an explanation of why the information was not available.

88. Defendant SLS violated §2605e(3) by providing derogatory information to the CRAs regarding purportedly delinquent payments that were disputed by Plaintiff within 60 days of receiving Plaintiff's dispute letters.

89. Upon information and belief, the Defendant SLS' conduct is not just limited to Plaintiff, but the Defendant also commits the same foregoing violations against other borrowers that have loans serviced by the Defendant.

90. Defendant SLS' violations were numerous and consistent, constituting a "pattern or practice" of noncompliance with the requirements of 12 U.S.C §2605 *et seq*.

91. As a result of the conduct, actions and inactions of SLS, the Plaintiff has suffered actual damages including without limitation, by example only and as described herein by Plaintiff: reduced credit score, damage to her financial reputation, loss of credit opportunity,

stress and anxiety, frustration, humiliation, emotional and mental distress, and physical sickness such as headaches, depression, insomnia, and tension with her family.

92. Defendant SLS' conduct was the proximate cause of Plaintiff's injuries, rendering Defendant liable for actual damages in an amount to be determined by the jury pursuant to 12 U.S.C. §2605f(1)(A), statutory damages pursuant to 12 U.S.C. §2605f(1)(B), costs and reasonable attorney's fees pursuant to 12 U.S.C. §2605f(3).

93. Plaintiff's RESPA claim merely seeks monetary damages and does not seek to overturn the District of Columbia's superior court foreclosure judgment in favor of Defendants

### COUNT THREE: VIOLATIONS OF MLBA
### (as to Defendants SLS and US Bank)

94. Plaintiffs incorporate paragraphs 1 - 93 by reference.

95. Defendants schemed to defraud Plaintiff into paying more money than owed on the debt and into paying parties that are not entitled to receive payment under the Note. Defendants mislead the Plaintiff into believing that US Bank had standing and that they had rights in the Note, and unfairly and deceptively assessed fees, charges and other costs and assessments against Plaintiff for a Loan that the Defendants had no right to enforce.

96. Defendants' foregoing illegal actions violated D.C. Code §§26-1114(d)(1),(2).

97. Plaintiff is seeking damages and/or restitution in an amount of $250,000 and any reasonable attorney fees incurred to litigate this action for Defendants' violations of MLBA under D.C. Code §26-1118(e).

98. Plaintiff's MLBA claim merely seeks monetary damages and does not seek to overturn the District of Columbia's superior court foreclosure judgment in favor of Defendants

### COUNT FOUR: VIOLATIONS OF CPPA
### (as to Defendants SLS and US Bank)

99. Plaintiffs incorporate paragraphs 1 – 98 by reference.

100. Defendants made statements that misrepresented its rights in the Property, Note and Deed of Trust, and Defendants' misrepresentations tended to mislead Plaintiffs into believing that the Defendants had rights to in the Property, Note and Deed of Trust.

101. Defendants made statements that they had rights to assess interest, fees, charges, costs and expenses when those assessments were invalid. Plaintiff was misled by these misrepresentations and tended to believe the invalid assessments were valid.

102. Defendants failed to state that US Bank was not the real party-in-interest and had no standing, that none of the Defendants were a holder of the Note and none of them had a right to collect payments from Plaintiff. Defendants' omission caused Plaintiffs to believe that they may have had some legal right to collect the invalid assessments on the Note.

103. Defendants' foregoing illegal actions violated D.C. Code §§28-3904(e) and (f) by misrepresenting material facts that have a tendency to mislead and failing to state material facts of which such failure tended to mislead.

104. As a result of the aforesaid CPPA violations, Defendants are liable for: treble damages, or $1,500 per violation pursuant to §28-3904(k)(2)(A); punitive damages in the amount of $500,000 pursuant to §28-3904(k)(2)(C); and any reasonable attorney fees incurred in the litigation of this action pursuant to §28-3904(k)(2)(B).

105. Plaintiff's CPPA claim merely seeks monetary damages and does not seek to overturn the District of Columbia's superior court foreclosure judgment in favor of Defendants

### COUNT FIVE: VIOLATIONS OF §1681s-2(b)(1)
### (as to Defendant SLS)

106. Plaintiffs incorporate paragraphs 1 – 105 by reference.

<u>15 U.S.C. §1681s-2(b)(1)(A)</u>

107. Defendant violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

108. When the Plaintiff mailed her disputes to the CRAs, they used a dispute system named, "e-Oscar", which has been adopted by the CRAs and by their furnisher-customers such as Defendant. It is an automated system and the procedures used by the CRAs are systemic and uniform.

109. When the CRAs receive a consumer dispute, they (usually via an outsourced vendor) translate that dispute into an "ACDV" form.

110. Upon information and belief, the ACDV form is the method by which Defendant has elected to receive consumer disputes pursuant to 15 U.S.C. §1681i(a).

111. Based on the manner in which the CRAs responded to the Plaintiff's disputes, representing that Defendant had "verified" the supposed accuracy of their reporting, Plaintiff alleges that the CRAs did in fact forward the Plaintiff's dispute via an ACDV to Defendant.

112. Defendant understood the nature of the Plaintiff's dispute when they received the ACDV from the CRAs.

113. Notwithstanding the above, Defendant follow a standard and systemically unlawful process when they receive the ACDV dispute. Basically, all Defendant does is review its own internal computer screen for the account and repeat back to the ACDV system the same information that it already had reported to the CRAs.

114. When Defendant receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in its computer system is itself accurate.

U.S.C. §1681s-2(b)(1)(B)

115. Defendant SLS violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the CRAs.

116. As Plaintiff detailed above, Defendant SLS had elected to use the e-Oscar system for their FCRA disputes received through the CRAs.

117. SLS knows the meaning of the dispute codes used by the CRAs in e-Oscar.

118. Defendant SLS does not contend that the ACDV system is an inadequate means to receive FCRA disputes through the CRAs.

119. Defendant understood, or had an ample opportunity to understand, the nature of the Plaintiff's disputes and understood that the foreclosure was not complete but still in pending status, that the loan was not a conventional loan but an FHA loan, and that Plaintiff had justifiable reasons (mitigating information) for not paying SLS.

120. Nevertheless, Defendant ignored such information and instead simply regurgitated the same information they had previously reported to the CRAs.

### 15 U.S.C. §1681s-2(b)(1)(C)&(D)

121. Defendant SLS violated 15 U.S.C. §1681s-2(b)(1)(C) and (D) by publishing their representations within Plaintiff's credit files with the CRAs without also including a notation that these debts were disputed and by failing to correctly report results of an accurate investigation to each credit reporting agency.

122. Specifically, Defendant failed to add the "XB" code to the CCC (Compliance Condition Code) field in the ACDV dispute forms when they responded to the CRAs.

123. On information and belief, the Plaintiff alleges that Defendant rarely, if ever, add the XB code or other notation that an account is disputed when they respond to e-Oscar ACDVs.

124. Furthermore, Defendant knew that the Plaintiff disputed the subject account through his dispute letters to the CRAs.

125. Either SLS knew the account was disputed but failed to notate it as disputed or SLS failed to discover the account was disputed when it should have known the account was disputed.

126. The Plaintiff's disputes were bona fide as it was verifiable that the Property had not been foreclosed on yet and the loan was an FHA loan, Further, if Plaintiff's claim that Defendant contributed to Plaintiff's purported default, that information should have been included in Defendant's reporting and may have mitigated the default in the eyes of a creditor.

127. Nevertheless, Defendant did not notate the dispute, and instead simply regurgitated the same information they had previously reported to the CRAs

### 15 U.S.C. §1681s-2(b)(1)(E)

128. Defendant SLS violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify or delete the inaccurate, incomplete or unverifiable information that was disputed by Plaintiff.

129. A reasonable investigation would have revealed the disputed information was being reported inaccurately or incompletely.

130. Either SLS discovered the information was indeed inaccurate and refused to correct it or SLS failed to discover the error when it should have discovered the errors.

131. Defendant SLS did not verify the disputed information was accurate.

132. Nevertheless, Defendant did not modify or delete the disputed information and instead simply regurgitated the same information they had previously reported to the CRAs.

### DAMAGES

133. As a result of Defendants' violations of 15 U.S.C. §1681s-2(b)(1)(A)-(E), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to credit profile and reputation, embarrassment, humiliation and other mental and emotional distress.

134. The ongoing infractions were either intentional, or Defendant cared so little about the duties owed under the FCRA that their conduct was carried out with reckless disregard, which gives rise to a willful violation, rendering Defendant liable pursuant to 15 U.S.C. §1681n.

135. The violations by Defendant were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Defendant was negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

136. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

137. Plaintiff's FCRA claim merely seeks monetary damages and does not seek to overturn the District of Columbia's superior court foreclosure judgment in favor of Defendants

**WHEREFORE**, your Plaintiff demands judgment for actual, statutory and punitive damages against Defendant; for his attorney's fees and costs; for prejudgment and post-judgment interest; and any other relief deemed appropriate by this Court.

**A TRIAL BY JURY IS DEMANDED**

Respectfully submitted,

WASHINGTON LEGAL GROUP, LLC


  /s/ Jeffrey W. Styles
Jeffrey W. Styles, Esq., Bar #475264
Washington Legal Group, LLC
1150 Connecticut Ave NW – 9th Floor
Washington, District of Columbia 20036
Telephone:    (202) 503-1708
Facsimile:    (202) 503-1701
E-mail:   jstyles@washlegal.com

*Counsel Plaintiff*