# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CHRISTABELLE MUSHALA,

     Plaintiff,

     v.

US BANK, NATIONAL ASSOCIATION, et al.,

     Defendants.

Civil Action No. 18-1680 (JDB)

## MEMORANDUM OPINION

Christabelle Mushala brings various federal and state claims against U.S. Bank, National Association ("US Bank"), Specialized Loan Servicing LLC ("SLS"), and BWW Law Group, LLC ("BWW") arising from their roles in judicially foreclosing on her District of Columbia home. Mushala alleges that because defendants had no rights in the loan secured by the property, assessed invalid fees that she did not owe, and reported misleading information about her default to credit agencies, she is entitled to damages under, inter alia, the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., and two District of Columbia statutes proscribing deceptive practices. Defendants argue that res judicata bars most of Mushala's claims, pointing to a D.C. Superior Court final judgment in their favor following a nearly three-year long foreclosure litigation involving the same parties, facts, and arguments.

Currently pending before the Court are [4] and [5] defendants' motions to dismiss Mushala's original complaint, [8] and [9] defendants' motions to dismiss the amended complaint, and [12] Mushala's motion for summary judgment. For the reasons stated below, the Court will deny as moot [4] and [5] the motions to dismiss the original complaint, grant in part and deny in

part [8] US Bank and SLS's partial motion to dismiss, grant [9] BWW's motion to dismiss, and deny [12] Mushala's motion for summary judgment.

## BACKGROUND

### I.  LEGAL BACKGROUND

When an individual obtains a home loan from a lender, the debt, memorialized in a "promissory note," generally is secured with an interest in the underlying property.  Restatement (Third) of Property: Mortgages § 1.1 (Am. Law Inst. 1997).  The security interest may take the form of a "deed of trust" which, like a mortgage, "entitles the creditor to pursue foreclosure"— i.e., "the process in which property securing a mortgage is sold to pay off the loan balance due." Obduskey v. McCarthy & Holthus LLP, No. 17-1307, 2019 WL 1264579, at *2 (U.S. Mar. 20, 2019) (quoting 2 Baxter Dunaway, L. of Distressed Real Est. § 15:1 (2018)).  If "the foreclosure sale does not yield the full amount due, a creditor . . . may sometimes obtain a deficiency judgment, that is, a judgment against the homeowner for the unpaid balance of a debt."  Id.

Promissory notes may either be held by the original lender, transferred to a specific new "holder," or "[e]ndorsed in blank"—that is, endorsed without reference "to a specific party," making the note "payable to the bearer."  Chase Plaza Condo. Ass'n, Inc. v. JPMorgan Chase Bank, N.A., 98 A.3d 166, 169–170 (D.C. 2014).  In case of a default, the holder of the note "is normally entitled to enforce [it], including through foreclosure proceedings."  Id. at 169; see also D.C. Code § 28:3–301.  Under District of Columbia law, this is true "even if [the note holder] is not a successor in interest under the deed of trust, because 'the rights under the Deed of Trust follow the Note.'"  Chase Plaza, 98 A.3d at 170 n.2 (citation omitted).  Although the note holder ultimately has the right to enforce the terms of the note, a separate entity called a loan servicer often "handles the day-to-day tasks of managing [the] loan," including "process[ing] loan

payments" and "initiat[ing] foreclosure." Mohamed v. Select Portfolio Servicing, Inc., 215 F. Supp. 3d 85, 89 (D.D.C. 2016) (citations omitted).

## II.   STATUTORY BACKGROUND

Like other entities involved in extending credit or collecting debt, note holders that seek to enforce their interests are subject to statutory restrictions and duties designed to protect borrowers. Here, Mushala brings claims under, inter alia, the Fair Debt Collection Practices Act ("FDCPA") and the Fair Credit Reporting Act ("FCRA").

### A.   The FDCPA

Aimed at ending "abusive debt collection practices," the FDCPA prohibits "debt collector[s]" from, among other things, making "false . . . representations . . . in connection with the collection of any debt," and using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. §§ 1692(e), 1692e, 1692f; see Sheriff v. Gillie, 136 S. Ct. 1594, 1598 (2016). Categories of violative conduct under sections 1692e and 1692f include, among other things, the misrepresentation of "the character, amount, or legal status of any debt," 15 U.S.C. § 1692e(2), and "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if . . . there is no present right to possession of the property . . . through an enforceable security interest," id. § 1692f(6). The Act provides harmed debtors a private right of action to seek actual and statutory damages. Id. § 1692k.

### B.   The FCRA

Congress passed the FCRA to, among other things, "ensure fair and accurate credit reporting." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52 (2007). To that end, the FCRA imposes a range of duties on agencies that evaluate consumer creditworthiness (consumer reporting agencies or "CRAs"), and on entities that "furnish" information about borrowers to

CRAs ("furnishers"). See Armstrong v. Navient Sols., LLC, 292 F. Supp. 3d 464, 468 (D.D.C. 2018). As relevant here, furnishers of credit information have two general sets of duties. To "provide accurate information to CRAs in the first instance," and, after receiving notice from a CRA that a consumer has disputed furnished credit information, to investigate the dispute and correct any errors. Mohamed, 215 F. Supp. 3d at 92; see 15 U.S.C. §§ 1681s-2(a)(1), (b)(1). Borrowers only have a private right of action against furnishers for violating the latter set of duties, however. See Berlin v. Bank of Am., N.A., 101 F. Supp. 3d 1, 23 (D.D.C. 2015).

## III.   FACTS AND PROCEDURAL HISTORY[1]

### A.   The Note

In July 2008, Mushala took out a home loan against her Washington, D.C., residence (the "Property"). Am. Compl. [ECF No. 7] ¶ 8. The lender memorialized the loan in a promissory note and secured it with a deed of trust in the Property. Id. ¶¶ 7–8. In December of the same year, a different lender, Wells Fargo Bank, issued a second home loan against the Property for a similar amount, also memorialized in a promissory note (the "Note") and secured with a deed of trust in the Property. Id. ¶ 9. At a date not specified in the complaint, Wells Fargo declared the December 2008 loan in default, alleging that Mushala had failed to make payments for three months or more. Id. ¶¶ 14, 30.

In 2014, Wells Fargo endorsed the Note to a third party, and the Note later was endorsed in blank. See id. ¶¶ 17–19. In March the same year, US Bank sent Mushala a letter informing her that it had acquired the Note and that SLS would serve as the loan servicer. Id. ¶ 16.[2]

---

[1] Because the Court will deny defendants' motions to strike the amended complaint below, the relevant facts are drawn from plaintiff's amended complaint. The facts are assumed to be true for purposes of the motions to dismiss.

[2] Strictly speaking, a trust titled U.S. ROF III Legal Title Trust 2015-1 acquired the Note, and US Bank sent the letter, pursued foreclosure, and otherwise acted on the trust's behalf as legal title trustee. See Compl. for Judicial Foreclosure Sale ("Foreclosure Compl.") at 1, Ex. A to BWW's Mot. to Dismiss [ECF No. 5-3]; Am. Compl. ¶ 24.

### B.     The Foreclosure Proceedings

In December 2015, US Bank filed a foreclosure action in D.C. Superior Court to enforce the terms of the Note.  Id. ¶ 24; see Foreclosure Compl. at 1.[3]  BWW, a law firm that collects mortgage debts on behalf of loan servicers, represented US Bank in the foreclosure action.  Am. Compl. ¶ 5; Foreclosure Compl. at 1, 9.

After Mushala failed to appear, the Superior Court entered default judgment and a decree for sale in favor of US Bank.  See Order Granting [US Bank's] Mot. for Default J. & Decree for Sale of Real Prop. ("Order Granting Default J."), Ex. B to BWW's Consolidated Reply in Supp. of Its Mot. to Strike or, in the Alt., to Dismiss [ECF No. 20-2] at 1–2.  Shortly thereafter, Mushala appeared pro se and moved to vacate the default judgment.  See Mot. to Vacate Default, U.S. ROF III Legal Title Trust v. Mushala, 2015 CA 009830 R(RP) (D.C. Sup. Ct. Nov. 18, 2016) [hereinafter "Mushala"].  The Superior Court denied Mushala's motion and, after the Property was sold to a third party in July 2017, granted US Bank's motion to ratify the sale.  See Min. Entries of Sept. 29, 2017 & June 30, 2017, Mushala, 2015 CA 009830 R(RP); Order Granting Mot. to Ratify Sale of Real Prop. ("Order Ratifying Sale"), Ex. 2 to Partial Mot. to Dismiss Pl.'s Compl. [ECF No. 4-3].

In an attempt to unwind the foreclosure, Mushala—by then represented by counsel— moved to dismiss on the grounds that the Superior Court never had jurisdiction to effect the sale. See Mem. in Supp. of [Mushala's] Mot. to Dismiss, Ex. 3 to Partial Mot. to Dismiss Pl.'s Compl.

---

For the sake of simplicity, and because the distinction is not relevant here, the Court refers to the ROF III Trust and U.S. Bank interchangeably.

[3] The Court may take judicial notice of public documents filed in the foreclosure action before the D.C. Superior Court, some of which are attached as exhibits to the parties' filings.  See Turpin v. Ray, 319 F. Supp. 3d 191, 203 (D.D.C. 2018) ("Because the D.C. Superior Court docket is a public document, the Court may take judicial notice of such documents" in the context of a motion to dismiss.) (citing Covad Commc'ns Co. v. Bell Atl. Corp., 407 F.3d 1220, 1222 (D.C. Cir. 2005)); see also Lewis v. Parker, 67 F. Supp. 3d 189, 195 n.6 (D.D.C. 2014).

[ECF No. 4-4], at 3–4. No jurisdiction existed, Mushala argued, because US Bank never legally possessed the Note, and thus had no standing to foreclose. Id. Mushala eventually withdrew the motion, however, and entered a settlement with the third-party buyer. Am. Compl. ¶ 68; Min. Entry of June 20, 2018, Mushala, 2015 CA 009830 R(RP).

US Bank, meanwhile, moved to confirm a deficiency judgment and the propriety of certain costs and fees assessed on the loan. See Mot. to Ratify Accounting, Release Bond, and Close Case ("Mot. to Ratify Accounting"), Mushala, 2015 CA 009830 R(RP) (D.C. Sup. Ct. Feb. 16, 2018). Mushala challenged the deficiency amount and requested a "breakdown or calculation" of the assessed fees. See [Mushala's] Opp'n to Mot. to Ratify Accounting, Mushala, 2015 CA 009830 R(RP) (D.C. Sup. Ct. Mar. 3, 2018) at 1, 4. After US Bank responded with supplementary evidence, however, the Superior Court granted US Bank's motion and closed the case. Order Granting Mot. to Ratify Accounting, Release Bond, and Close Case ("Order Granting Mot. to Ratify Accounting"), Mushala, 2015 CA 009830 R(RP) (D.C. Sup. Ct. Oct. 9, 2018) at 1–2. Mushala did not appeal.

### C.    The Instant Lawsuit

In May 2018, Mushala filed suit in D.C. Superior Court, and defendants subsequently removed the case to this Court. See Notice of Removal [ECF No. 1]; Compl. & Jury Demand, Ex. 1 to Notice of Removal [ECF No. 1-2]. Mushala brings claims under the FDCPA, the FCRA, the District of Columbia Mortgage Lender and Broker Act of 1996 ("MLBA"), D.C. Code § 26-1101

et seq., and the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901 et seq.[4]

As relevant to her FDCPA, MLBA, and CPPA claims, Mushala alleges that, although she took out a home loan in July 2008, she never took out a December 2008 loan, and the Note memorializing that loan was fraudulent. Am. Compl. ¶¶ 10, 29. Defendants therefore misled her throughout the foreclosure proceedings, Mushala claims, by falsely representing that the Note was legitimate, that US Bank had standing to foreclose, and that US Bank had satisfied the necessary conditions precedent for lawful foreclosure. Id. ¶¶ 27, 29, 31, 33, 44, 71–73, 95, 100. Even if the Note was legitimate, Mushala charges, defendants misrepresented that the Note was validly endorsed to US Bank. Id. ¶¶ 18–19, 22–23, 28, 73, 95, 101. Additionally, defendants allegedly misrepresented the amount due under the Note, and deceptively charged Mushala unsubstantiated, excessive, and duplicative fees or other assessments on the loan. Id. ¶¶ 46, 51, 70.

Relevant to her FCRA claims, Mushala separately alleges that, in April 2018, she sent a letter to various consumer reporting agencies, including Equifax, Experian and TransUnion, notifying them that she disputed a report SLS had furnished to them about her default and foreclosure. Am. Compl. ¶¶ 52–54. Mushala informed the CRAs that SLS had, among other things, failed to note that she disputed the reported debt, failed to include mitigating information regarding her default, and inaccurately listed the Property as "foreclosed" in July 2017, even though the foreclosure proceeding was then ongoing. Id. ¶¶ 53–56. Although the CRAs subsequently notified SLS of Mushala's dispute, Mushala alleges, SLS failed to conduct an investigation, consider the content of the dispute, correct any errors or inaccuracies, or update its

---

[4] Mushala also alleges that SLS violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 et seq. See Am. Compl. ¶¶ 78–93 (Count II). SLS does not move to dismiss the RESPA claim, however, conceding that it will have to be resolved at the summary judgment stage. Mem. [in Supp. of US Bank's & SLS's Partial Mot. to Dismiss & Mot. to Strike Am. Compl.] ("Defs.' Am. Mot.") [ECF No. 9-1] at 2.

report to reflect that Mushala had disputed the debt. Id. ¶¶ 57–58. Instead, SLS "simply regurgitated the same information it had previously reported to the CRAs" without change. Id. ¶ 57.

Based on the foregoing, Mushala alleges that (1) BWW and SLS violated the FDCPA, id. ¶¶ 69–77 (Count I); (3) SLS and US Bank violated the MLBA and the CPPA, id. ¶¶ 94–105 (Counts III & IV); and SLS violated the FCRA, id. ¶¶ 106–137 (Count V). BWW filed a motion to dismiss Count I (the only claim against it), and SLS and US Bank jointly filed a partial motion to dismiss the majority of Count I, and all of Counts III, IV and V. See Partial Mot. to Dismiss Pl.'s Compl. ("Defs.' Mot") [ECF No. 4]; Mot. to Dismiss ("BWW's Mot") [ECF No. 5].

After Mushala filed an amended complaint, Defendants renewed their motions to dismiss on the same grounds and moved, in the alternative, to strike the amended complaint as untimely. See Mot. to Strike or, in the Alt., to Dismiss ("BWW's Am. Mot.") [ECF No. 8-1]; Defs.' Am. Mot. In response, Mushala filed a motion styled as both an opposition to defendants' renewed motions to dismiss and a motion for summary judgment. See Pl. Mushala's Am. Opp'n to Defs.' Mots. to Strike, and/or in the Alt., Mots. to Dismiss, & Pl.'s Cross-Mot. for Summ. J. ("Pl.'s Opp'n") [ECF No. 12]. The motions are fully briefed and ripe for resolution.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint that "pleads facts that are merely consistent with a defendant's liability" falls short of showing plausible entitlement to relief.

Atherton v. D.C. Office of the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009) (quoting Iqbal, 556 U.S. at 678). The Court must take all allegations in the complaint as true and draw all reasonable inferences in the plaintiffs' favor. See Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans, Inc., 525 F.3d 8, 15 (D.C. Cir. 2008). However, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s] devoid of further factual enhancement," do not satisfy the pleading standard. Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted). The Court need not accept legal conclusions or inferences drawn by the plaintiff which are unsupported by facts alleged in the complaint. Food & Water Watch, Inc. v. Vilsack, 808 F.3d 905, 913 (D.C. Cir. 2015).

To move for summary judgment, a party must "identify[] each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id.

## DISCUSSION

Before turning to the pending motions to dismiss, the Court briefly addresses defendants' motions to strike and Mushala's motion for summary judgment.

### I. MOTIONS TO STRIKE

As mentioned, defendants have moved, in the alternative, to strike the amended complaint as untimely. See Defs.' Am. Mot. at 14–15; BWW's Am. Mot. at 2. Under the Federal Rules of Civil Procedure, plaintiffs may file an amended complaint "as a matter of course" within 21 days of a Rule 12(b) motion, otherwise requiring leave of Court or the opposing parties' consent. Fed. R. Civ. P. 15(a)(1). Because Mushala here filed the amended complaint 26 days after US Bank and SLS's partial motion to dismiss—and failed to obtain leave of Court to do so—defendants

argue the complaint must be stricken.  Mushala responds that the amended complaint was timely as to all parties and, in the alternative, seeks the Court's leave to file the amended complaint.  See Pl.'s Opp'n at 16.

The Court grants Mushala's request for leave to amend without reaching whether the amended complaint was timely filed.  Leave to amend should be "freely given" absent "undue delay," "bad faith," "dilatory motive," "repeated failure to cure deficiencies," or "undue prejudice" to the opposing party.  Foman v. Davis, 371 U.S. 178, 182 (1962); Fed. R. Civ. P. 15(a)(2). Defendants identify none of those grounds here.  Indeed, they ignored altogether Mushala's request for leave to amend.  Hence, the Court grants the request, treats the amended complaint as the operative complaint, and will deny as moot defendants' motions to dismiss or partially dismiss the original complaint.

## II.    MOTION FOR SUMMARY JUDGMENT

Defendants separately contend that Mushala has not properly filed a motion for summary judgment.  Although captioned as both a motion for summary judgment and an opposition to their motions to dismiss, defendants say, Mushala's motion does not indicate any claims or defenses on which summary judgment is sought, does not include a statement of material facts as required by this district's local rules, and is otherwise indistinguishable from a mere opposition to the motions to dismiss.  See SLS and US Bank's Reply in Supp. of Defs.' Am. Mot. ("Defs.' Reply") [ECF No. 18] at 14–15; BWW's Consolidated Reply in Supp. of BWW's Am. Mot. at 4; see also Local Civ. R. 7(h).  Mushala failed timely to respond to this argument, instead filing a supplemental memorandum five weeks later purporting to correct various deficiencies in her earlier-filed motion. See Pl.'s Suppl. to Her Cross-Mot. for Summ. J. [ECF No. 22].  Defendants urge the Court to

ignore this supplemental memorandum as untimely.  See [Defs.'] Resp. to ECF No. 22 [ECF No. 23]; BWW's Resp. to ECF No. 22 [ECF No. 24].

The Court will deny Mushala's purported motion for summary judgment.  Rule 56 of the Federal Rules of Civil Procedure requires movants to "identify[] each claim or defense . . . on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  Whether or not considered together with her untimely filed supplemental memorandum, the motion does not meet this basic procedural requirement.  As defendants point out, beyond captioning the filing as a motion for summary judgment, Mushala requests no specific relief on the merits of any claim or part of a claim.  Rather, the motion does little besides oppose defendants' arguments in favor of their motions to dismiss.[5]  Because the motion fails even to request summary judgment on any claim or part of a claim, the Court denies the motion as improperly filed.

### III.    MOTIONS TO DISMISS

Defendants move to dismiss Mushala's claims under the FDCPA, the FCRA, the MLBA, and the CPPA.  The Court considers the claims brought under each statute in turn.

### A.    FDCPA Claims Against BWW and SLS

Mushala alleges that SLS and BWW violated the FDCPA in two ways relevant here.[6]  First, she alleges they falsely represented to Mushala that US Bank had the legal right to foreclose on

---

[5] Mushala does assert, in one sentence of her motion, that she is "entitled to summary judgment" on "whether the credit report" SLS allegedly furnished to CRAs "was inaccurate."  Pl.'s Opp'n at 14.  But the Court does not grant summary judgment on facts; it grants summary judgment on claims if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Even if the Court assumes Mushala meant to argue that there is no dispute as to whether SLS submitted an inaccurate credit report to a CRA, and summary judgment therefore is warranted on (presumably) one of her FCRA claims, she does not identify which FCRA claim or how this fact entitles her to judgment as a matter of law.  Indeed, establishing only that a furnisher submitted an inaccurate report does not give rise to a claim under the FCRA.  See Berlin, 101 F. Supp. 3d 1 at 23–24.

[6] Mushala separately alleges that SLS failed to report her loan to the CRAs as "disputed" in violation of 15 U.S.C. § 1692e(8), an FDCPA provision that prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."  SLS does not move to dismiss that claim, conceding that the alleged violation of section 1682e(8) "will need to be resolved by summary judgment."  Defs.' Am. Mot. at 2.

the Property. <u>See</u> Am. Compl. ¶¶ 71–73 (alleging, <u>inter alia</u>, that SLS falsely represented that all conditions precedent to foreclose were satisfied, that US Bank legitimately possessed the Note, and that US Bank had a right to collect on the debt, in violation of sections 1692e(2), (5), (10), and 1692f(1), (6)). Second, they allegedly "collect[ed], attempt[ed] to collect, and/or threaten[ed] to collect an inflated debt amount that was caused by . . . the assessment of unsubstantiated fees, inflated or excessive fees, redundant or duplicative fees, and fees for services or actions that never occurred." <u>Id.</u> ¶ 70.

Defendants argue that any FDCPA claims predicated on these allegations are barred by res judicata because the "propriety of the foreclosure was litigated to judgment in the Superior Court." Defs.' Mot. at 4. Except for the FDCPA claim they do not challenge, then, defendants contend Mushala's FDCPA claims must be dismissed.[7] <u>Id.</u> at 4 n.1. Mushala, for her part, argues that even a "cursory" comparison of the foreclosure proceedings and the instant proceeding will reveal that her FDCPA claims survive. <u>See</u> Pl.'s Opp'n at 5–6.

To determine whether res judicata applies, the Court looks to District of Columbia law. <u>See</u> <u>Bode & Grenier, LLP v. Knight</u>, 808 F.3d 852, 857 (D.C. Cir. 2015) ("Federal courts extend to state court judgments the same preclusive effect those judgments would receive in the originating state."); <u>see also</u> <u>Quick v. EduCap, Inc.</u>, 318 F. Supp. 3d 121, 139 (D.D.C. 2018) (explaining that "District of Columbia law determines [any] preclusive effect" when "the earlier case[] involved judgments rendered by the D.C. Superior Court").

"Under the doctrine of res judicata," the D.C. Court of Appeals has explained, "a final judgment on the merits of a claim bars relitigation in a subsequent proceeding of the same claim

---

[7] BWW separately moves to dismiss the FDCPA claims against it as untimely filed under the FDCPA's one-year statute of limitations. BWW's Am. Mot. at 5–6. Because the Court will find that the claims against BWW are barred by res judicata, it need not address whether Mushala's claims against BWW are untimely.

between the same parties or their privies." EDCare Mgmt., Inc. v. DeLisi, 50 A.3d 448, 451 (D.C. 2012) (citation omitted). "Res judicata bars not only claims that actually were litigated in the first action but 'all issues arising out of the same cause of action' that could have been litigated." Id. (citation omitted). "[A]ctions arise out of the same cause of action" when they stem from "a common nucleus of facts." Patton v. Klein, 746 A.2d 866, 870 (D.C. 1999) (citations omitted). "In determining whether the claim arises from the same factual nucleus, we consider the nature of the two actions, the facts necessary to prove each, and 'whether the facts are related in time, space, origin, or motivation . . . .'" Id. (citation omitted). Accordingly, "a party whose claims have been—or should have been—decided in [a prior proceeding] 'may not then bring the same claims under new labels.'" DeLisi, 50 A.3d at 451 (citation omitted).

Res judicata plainly applies here. During the nearly three-year foreclosure litigation before the D.C. Superior Court, Mushala raised identical arguments against the same parties arising from the same facts, all of which were litigated to final judgment.[8] Mushala's current claims therefore arise out of the same nucleus of facts as the prior action, should have been (or were) decided in the prior proceeding, and cannot be relitigated here.

Mushala's primary FDCPA claim, for instance, alleges that defendants misrepresented that US Bank had a legal right to foreclose based on a legitimate, validly endorsed promissory note secured by a deed of trust in the Property. See Am. Compl. ¶¶ 71–72. The foreclosure complaint

---

[8] Mushala briefly suggests that the earlier action did not involve the same parties. See Pl.'s Opp'n at 6 (arguing that the Court can "construe" that the prior proceeding "does not implicate [US Bank's] agents SLS and BWW"). "Under D.C. law, agents and principals are in privity for res judicata purposes 'if the prior action concerned a matter within the agency.'" Herrion v. Children's Hosp. Nat. Med. Ctr., 448 F. App'x 71, 73 (D.C. Cir. 2011) (quoting Major v. Inner City Property Mgmt., Inc., 653 A.2d 379, 381 (D.C. 1995)). Here, the prior action indisputably concerned a matter "within the agency"—SLS and BWW were hired to service or help to collect the at-issue debt. See also Kimball v. Orlans Assocs. P.C., 651 F. App'x 477, 481 (6th Cir. 2016) (noting that "[m]yriad district courts agree that a mortgage's loan servicer acts as agent for the mortgagee, thereby satisfying res judicata's privity requirement for suits involving the mortgage," and that "[a]ttorney [d]efendants are also in privity with [the mortgagee] concerning the mortgage foreclosure by virtue of their position as foreclosure counsel" (citing cases)).

US Bank filed in the first action, however, alleged that Mushala validly executed the Note, US Bank possessed the Note, Mushala defaulted in 2011, and "there are no known title defects or other issues that would preclude a judicial foreclosure" to satisfy the debt. Foreclosure Compl. at 2–3. Next, as described above, the Superior Court granted US Bank's motion for default judgment, denied Mushala's motion to vacate that judgment, and ratified the foreclosure sale. See Order Granting Default J. at 1–2; Min. Entry of June 30, 2017, Mushala, 2015 CA 009830 R(RP); Order Ratifying Sale; see also Quick, 318 F. Supp. 3d at 139 ("District of Columbia law treats a default judgment as a final adjudication on the merits for res judicata purposes." (citing cases)); cf. Bank of N.Y. Mellon v. Nagaraj, 220 Md. App. 698, 707 (2014) ("[T]he final ratification of the sale of property in foreclosure is res judicata as to the validity of the sale.").

Moreover, Mushala filed (and then withdrew after entering a settlement) a motion raising virtually identical standing arguments as those repeated here. Mushala asserted before the Superior Court, for instance, that US Bank "failed to show that it is the 'holder' of the Note," "has failed to demonstrate it has standing," and has failed to establish that the "[N]ote has . . . been endorsed to [US Bank]." Mem. in Supp. of [Mushala's] Mot. to Dismiss at 3–4. She further argued that the Note is "a patent fake" and that there is "no evidence" the "blank indorsement" "was valid." Suppl. Mem. To [Mushala's] Mot. to Dismiss, Ex. 3 to Partial Mot. to Dismiss Pl.'s Compl. [ECF No. 4-5] at 1, 5–6. The Court strains to see any difference between the allegations then and the allegations now. See Am. Compl. ¶¶ 29, 71–73 (alleging that "the signature on th[e] Note may be a forgery," defendants misrepresented that they "had standing to conduct a foreclosure sale," "were in possession of the original Note," and "had complied with all the conditions precedent to conduct the foreclosure sale"). It therefore is clear that Mushala's FDCPA claims predicated on the illegitimacy of the Note or US Bank's lack of standing arise from facts at

the core of the first action, and that she "had ample opportunity" to press such claims there. Quick, 318 F. Supp. 3d at 140.[9]

Res judicata also plainly bars Mushala's FDCPA claims alleging defendants collected or threatened to collect "unsubstantiated fees" or an "inflated debt amount." Am. Compl. ¶ 70; see also id. ¶ 51. To the extent Mushala contends these fees or the debt were invalid because defendants had no standing to enforce the Note or the deed of trust, the claims are barred for the reasons already explained. And to the extent Mushala alleges the fees were otherwise unsubstantiated or misleading, those issues also were litigated to conclusion before the Superior Court. As noted, while litigating the standing issue, US Bank filed a motion to ratify the accounting that the Superior Court eventually granted. See Mot. to Ratify Accounting; Order Granting Mot. to Ratify Accounting (holding that "the accounting is in order and is reasonable" and ordering that "the foreclosure sale . . . is hereby final and this case is **CLOSED**" (first emphasis added)). In opposing US Bank's motion to ratify the accounting, Mushala raised identical arguments to those raised here. See [Mushala's] Opp'n to Mot. to Ratify Accounting at 4 & n.4 (contending that defendants failed to "show[] that the deficiency amount is accurate" and failed to "provide proof that the costs or amounts assessed on the loan were valid").

Mushala's main rejoinder is not persuasive. The FDCPA claims do not stem from the "same nucleus of facts" litigated in the first action, she says, because they concern "the method of

---

[9] Mushala's FDCPA claims premised on US Bank's lack of standing likely fail for various additional reasons. First, to the extent her claims are premised on fraudulent endorsements of the promissory note or assignments of the deed of trust, she "lacks standing to challenge" those transfers because she was "not a party to, or an intended beneficiary of" those third-party agreements. Rivera v. Rosenberg & Assocs., LLC, 142 F. Supp. 3d 149, 155 (D.D.C. 2015). This standing principle "has been applied specifically in the FDCPA context" to preclude similar allegations to those Mushala brings against defendants here, including that "loan processing companies and law firms . . . violated the FDCPA by fabricating mortgage assignments, fraudulently endorsing affidavits, and backdating mortgage transfers, in order to initiate foreclosure actions on behalf of trusts that otherwise lacked standing to foreclose." Id. at 156. Second, to the extent Mushala's FDCPA claims "in essence . . . [allege] that [US Bank] did not have the authority to initiate foreclosure proceedings because it did not produce adequate proof of its claim," a number of courts have found that "such allegations do not suffice to state a claim" for deceptive conduct under the FDCPA. Cooke v. Carrington Mortg. Servs., Civ. No. 18-0205, 2018 WL 6323116, at *5 (D. Md. Dec. 3, 2018) (citing cases).

[the debt's] collection," "not the debt itself." Pl.'s Opp'n at 2, 7. But Mushala's argument is belied by her complaint, which contains no allegations at all concerning the loan's "method of collection." Rather, as already has been detailed, the complaint repeatedly challenges the validity of the debt, that defendants had a right to enforce it, and the fees associated with that debt, on the same grounds already advanced in the first action. Similarly unavailing is Mushala's contention that res judicata is inapplicable because she "is not asking the court to nullify the prior court judgement," and instead requests only "monetary damages." Pl.'s Opp'n at 8. That Mushala does not expressly seek to overturn the Superior Court's decision is immaterial. What matters is that "the factual nucleus, the circumstances of the foreclosure, from which [her] []claims arise, have already been litigated." U.S. Bank Nat'l Ass'n v. Poblete, Civ. No. 15-312, 2016 WL 1089217, at *9 (D.D.C. Mar. 18, 2016); see also Williams v. Gerstenfeld, 514 A.2d 1172, 1179 (D.C. 1986) ("It is irrelevant [if] the nature of the two proceedings [is] different; as long as the parties are the same, and the essence of the claim and evidence necessary to establish it are the same, res judicata applies."). Mushala cannot, therefore, "escape the preclusive effect of the [res judicata] doctrine by . . . seeking a different remedy." Menoken v. McGettigan, 273 F. Supp. 3d 188, 195–96 (D.D.C. 2017).

Hence, the Court finds that res judicata bars the challenged FDCPA claims. Mushala has had a full and fair chance to litigate, the claims were resolved on the merits, and she will not get a second bite at the apple now. Except for the claim arising under 15 U.S.C. § 1692e(8) that SLS does not challenge at this stage, the FDCPA claims therefore will be dismissed. Because there are no surviving claims against BWW, the Court will grant BWW's motion to dismiss.

### B. MLBA Claims Against SLS and US Bank

The Court next considers Mushala's claims under the MLBA. The MLBA "provide[s] for the licensing and regulation of mortgage lenders." Mortgage Lender and Broker Act of 1996, D.C. Laws 11-155 (codified at D.C. Code §§ 26-1101 et seq.). Sections 26-1114(d)(1) and (2) of the D.C. Code prohibit "both lenders and servicers" from "'defrauding or misleading borrowers'" and "engaging in 'unfair or deceptive practices.'" Logan v. LaSalle Bank Nat'l Ass'n, 80 A.3d 1014, 1026 (D.C. 2013) (quoting D.C. Code §§ 26-1114(d)(1), (2)) (alterations omitted). Mushala alleges that SLS and US Bank violated those sections by "scheming to defraud" her into "paying parties that are not entitled to receive payment under the Note," by "mislead[ing] [her] into believing that US Bank had standing and . . . rights in the Note," and by "unfairly and deceptively assess[ing] fees, charges, and other costs . . . for a [l]oan that [they] had no right to enforce." Am. Compl. ¶ 95.

Although the parties dispute whether the MLBA confers a private cause of action for violations of section 26-1114(d), see Defs.' Am. Mot. at 10–11; Pl.'s Opp'n at 9–10, the Court need not reach that issue.[10] Even assuming Mushala has a cognizable MLBA claim, res judicata bars it. Mushala identifies the same factual predicates for the MLBA claim as she alleged under the heading of the FDCPA; namely, that US Bank had no rights in the Note or standing, that she paid an inflated amount, and that defendants assessed unfair fees on the loan. Am. Compl. ¶ 95. It is irrelevant that the claims are brought under the heading of the MLBA, rather than the FDCPA or another cause of action. See Patton, 746 A.2d at 870 (explaining that the scope of barred claims for purposes of res judicata "is determined by 'the factual nucleus, not the theory on which a

---

[10] Neither any District of Columbia court nor any federal court appears to have considered whether the MLBA permits a private cause of action for violations of section 26-1114(d), and the answer is not clear from the face of the statute. Because res judicata is dispositive, the Court will not decide this question of first impression.

plaintiff relies.'" (citation omitted)); <u>Apotex, Inc. v. Food & Drug Admin.</u>, 393 F.3d 210, 217–18 (D.C. Cir. 2004) ("There are no new facts. [Plaintiff] is simply raising a new legal theory. This is precisely what is barred by <u>res judicata</u>."). Hence, for the reasons earlier described, the Court finds any cognizable MLBA claims barred.

### C. CPPA Claims Against SLS and US Bank

The Court now turns to Mushala's claims under the CPPA. As relevant here, the CPPA proscribes merchants from engaging in a broad array of "unfair or deceptive trade practice[s]" including, as relevant here, making "misrepresent[ations] as to a material fact which has a tendency to mislead," and "fail[ing] to state a material fact if such failure tends to mislead." D.C. Code § 28-3904(e), (f).

Mushalla brings claims under sections 28-3904(e) and (f) of the CPPA premised, once again, on allegations that defendants "misrepresented [their] rights in the Property, Note and Deed of Trust" and "made statements that they had rights to assess [invalid] interest, fees, charges, costs, and expenses." Am. Compl. ¶¶ 100–104. Defendants argue that Mushala has failed to plead a CPPA claim because SLS and US Bank are not "merchants" under the CPPA. <u>See</u> Defs.' Am. Mot. at 11.

As an initial matter, res judicata bars the CPPA claims for the reasons already stated—they allege the same facts under a new theory. But even if res judicata did not apply, Mushala plainly fails to state a claim under the CPPA. As the D.C. Circuit has recently explained, the "CPPA applies only to consumer-merchant relationships," and "a debt collector[] attempting to recoup funds on behalf of a creditor who <u>did not itself provide Appellant with any credit</u>" does not create a such a relationship for purposes of the CPPA. <u>Baylor v. Mitchell Rubenstein & Assocs., P.C.</u>, 857 F.3d 939, 948 (D.C. Cir. 2017) (emphasis added). Just as in <u>Baylor</u>, defendants did not here

"provide[] [Mushala] with any 'goods or services.'" Id. at 948. It was Wells Fargo, not defendants, that provided Mushala with the original loan. Am. Compl. ¶¶ 9. And even if US Bank or SLS are "merchants in [their] own right," Mushala did not become a "'consumer' of the services [they] provide[d]" by owing money under the Note or being subject to the foreclosure proceeding. Baylor, 857 F.3d at 948–49. "Because [the Court] finds that [defendants'] actions did not take place within the context of a consumer-merchant relationship," id. at 949, Mushala fails to state a CPPA claim.

### D. FCRA Claims Against SLS

Finally, the Court considers Mushala's FCRA claims. Mushala brings FCRA claims against SLS under 15 U.S.C. § 1681s-2(b). See Am. Compl. ¶¶ 106–132. To state a claim under that section, Mushala must allege that: (1) she notified a CRA of a dispute related to her credit information; (2) the CRA then notified the furnisher of the information about the dispute; and (3) the furnisher failed to fulfill the obligations enumerated in § 1681s–2(b)(1). Mohamed, 215 F. Supp. 3d at 93. There is no dispute that Mushala has met the first two requirements by adequately alleging that she sent CRAs a dispute letter and that the CRAs in turn notified SLS of the dispute. See Am. Compl. ¶¶ 52–53, 57–59. The dispute centers on the third requirement: whether Mushala has sufficiently alleged SLS violated its obligations under section 1681s-2(b)(1).

Under section1681s-2(b)(1), after a consumer disputes a debt with a CRA and the CRA informs the furnisher, the furnisher must "conduct an investigation with respect to the disputed information," including a "review" of "all relevant information" the CRA provided, and then report the results of the investigation to the CRA. 15 U.S.C. §§ 1681s-2(b)(1)(A), (B), (C); see also 15 U.S.C. § 1681i(a)(2). "[I]f the investigation finds that the information is incomplete or inaccurate," the furnisher must also "report those results to all other [CRAs] to which the person

furnished the information and that compile and maintain files on consumers on a nationwide basis," and then either "modify," "delete," or "permanently block the reporting of" the incomplete or inaccurate information. Id. §§ 1681s-2(b)(1)(D), (E).

Mushala alleges that SLS violated sections 1681s-2(b)(1)(A) and (B) of the FCRA because, after the CRAs notified SLS of the dispute, SLS "fail[ed] to fully and properly investigate," essentially "ignor[ing] [the] information" the CRAs provided. See Am. Compl. ¶¶ 115–120. Indeed, rather than "conduct[ing] a substantive review . . . to determine whether or not the information already in its computer system [was] . . . accurate," Mushala alleges, SLS "simply regurgitated the same information they had previously reported to the CRAs." Id. ¶¶ 114, 120.

SLS responds that section 1681s-2(b)(1)(A) "requires only that an investigation be done," and that there is no indication SLS's review of its own records was not a sufficient "investigation" under that subsection. Defs.' Mot. at 13. Nor, according to SLS, does Mushala sufficiently allege that it failed adequately to review and investigate "the information provided by the [CRAs]." Id. at 14. "[T]o make the determination as to whether [SLS's] investigation was reasonable" under section 1681s-2(b)(1), SLS contends, "the Court must know what information was provided to the [CRA]"—but here, Mushala failed to "identify what information was provided [to the CRAs] in the dispute [letter]." Defs.' Reply at 13 (citing Alston v. United Collections Bureau, Inc., Civ. No. 13-913, 2014 WL 859013, at *8–9 (D. Md. Mar. 4, 2014)).

Mushala has stated a claim under 1681s-2(b)(1)(A) and (B). Contrary to SLS's suggestion, Mushala did specifically allege that SLS conducted an inadequate investigation and that it failed to review all relevant information. See Am. Compl. ¶¶ 57–59, 113–14, 120 (alleging that SLS merely "repeat[ed] back to the [CRAs] the same information that it already had reported," conducted no "substantive review of any sort," and "ignored [the] information" CRAs provided).

Such allegations typically suffice to state a claim under 1681s-2(b)(1). See Mohamed, 215 F. Supp. 3d at 94; see also Akalwadi v. Risk Mgmt. Alts., Inc., 336 F. Supp. 2d 492, 510 (D. Md. 2004) ("Nothing in the language of the FCRA indicates the level of investigation required under § 1681s-2(b)(1). . . . It is generally a question of fact for the jury as to whether a reasonable investigation was conducted."). And Mushala need not at this stage identify what information she provided to the CRAs concerning the dispute. The case SLS cites for that proposition involved what evidence is relevant for purposes of summary judgment, not what is necessary to state a claim. See Alston, 2014 WL 859013, at *6–9 (explaining that the scope and specificity of "information provided to [CRAs]" is relevant to determining whether investigation was reasonable at summary judgment). Therefore, this portion of Mushala's FCRA claim survives SLS's motion to dismiss.

Mushala separately alleges that SLS violated sections 1681s-2(b)(1)(C), (D) and (E), which require furnishers to report to CRAs the results of the investigation, including if information was incomplete or inaccurate, and then to correct any inaccuracies or omissions. See Am. Compl. ¶¶ 121–132. SLS violated these subsections, Mushala contends, because even after the CRAs notified SLS of the dispute letter, SLS failed to update the information it was reporting to note that she disputed the debt. Id. ¶ 121. SLS responds that "the FCRA statute does not expressly require" it to notate that a debt is disputed after receiving a dispute notice, and only requires it to conduct an investigation. Defs.' Reply at 14. In other words, SLS argues that such a claim cannot be stated under the statute.

The D.C. Circuit has not decided whether a private plaintiff may state a section 1681s-2(b) claim by alleging that, after receiving a dispute notice from CRAs, a furnisher misleadingly continued to report the debt was undisputed. As a court in this district has explained, however,

several circuit courts have "found that . . . private plaintiffs . . . may challenge a furnisher's failure to report [debt as disputed] after receiving notice of a dispute in accordance with § 1681s-2(b), if the absence of such a notation would render the information materially misleading." Mohamed, 215 F. Supp. 3d at 94 (citing Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1162–64 (9th Cir. 2009), Saunders v. Branch Banking & Trust Co. of Va., 526 F.3d 142, 149–50 (4th Cir. 2008), and Llewellyn v. Allstate Home Loans, Inc., 711 F.3d 1173, 1186 (10th Cir. 2013)).

The Court finds those cases persuasive. As the Fourth Circuit explained in Saunders, "Congress clearly intended furnishers to review reports not only for inaccuracies in the information reported but also for omissions that render the reported information misleading." Saunders, 526 F.3d at 148; see also Koropoulos v. Credit Bureau, Inc., 734 F.2d 37, 40 (D.C. Cir. 1984) ("Certainly reports containing factually correct information that nonetheless mislead their readers are neither maximally accurate nor fair to the consumer who is the subject of the reports."). And omitting that debt is disputed plainly can be materially misleading. "[I]f a consumer has a meritorious dispute," for instance, then failing to notate a dispute obviously misleads because "the consumer's failure to pay the debt does not reflect financial irresponsibility." Saunders, 526 F.3d at 150.

Of course, this "does not mean that a furnisher could be held liable on the merits simply for a failure to report that a debt is disputed." Gorman, 584 F.3d at 1163. It merely means that such a claim may be stated under section 1681s-2(b), so long as the absence of such a notation is alleged to render the information materially misleading. To succeed on the merits, the "consumer must still convince the finder of fact that the omission of the dispute was 'misleading in such a way and to such an extent that [it] can be expected to have an adverse effect.'" Id. (quoting Saunders, 526 F.3d at 150). Ultimately, it is "the failure to report a bona fide dispute, a dispute

that could materially alter how the reported debt is understood, that gives rise to a furnisher's liability under § 1681s-2(b)." Id. (emphasis added).

Mushala has sufficiently stated such a claim here. See Am. Compl. ¶¶ 121, 124 (alleging that SLS failed to notate the debt as disputed after receiving notice from the CRAs). Although some of the inaccuracies or omissions that Mushala alleges may be insufficient to state a claim because, even if accepted as true, they risk no adverse effect and could not materially alter how the debt is understood, that is not true for every asserted dispute. For instance, Mushala claims that SLS prematurely reported the Property as foreclosed while foreclosure proceedings were ongoing, and that SLS omitted various relevant mitigating information—including that she tried but was unable to pay off her debt because of SLS's failure to provide necessary paperwork. See id. ¶¶ 34, 47, 53–54. Accepted as true, such omissions or inaccuracies plausibly could have rendered the reported debt materially misleading. Whether such disputes are in fact bona fide, and their omission was materially misleading, however, is a factual question best reserved for summary judgment or trial.

Hence, the Court finds that Mushala adequately has stated a claim alleging that SLS violated section 1681s-2(b)(1) of the FCRA both for failing to conduct a reasonable investigation into a disputed debt and for failing to report a bona fide dispute.

## CONCLUSION

For the reasons explained above, the Court grants [8] BWW's motion to dismiss the amended complaint, and grants in part and denies in part [9] US Bank's and SLS's motion to dismiss the amended complaint. The Court also denies [12] Mushala's amended motion for summary judgment and denies as moot [4] and [5] defendants' motions to dismiss the original complaint. Accordingly, the Court dismisses with prejudice Counts III and IV against SLS and

US Bank.  The Court also dismisses with prejudice FDCPA claims against SLS in Count I other than the claim arising under 15 U.S.C. § 1692e(8).  A separate order will issue on this date.

/s/
_____
JOHN D. BATES
United States District Judge

Dated:  <u>March 29, 2019</u>